UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FIRST NBC BANK** | * | **CIVIL ACTION** |
| | * | |
| versus | * | **NO. 17-6652** |
| | * | |
| **LEVY GARDENS PARTNERS 2007, LP** | * | **NJB-JCW** |
| | * | |

******************************************

### ANSWER BY LEVY GARDENS PARTNERS 2007, LP AND COMPULSORY COUNTERCLAIM AGAINST GIROD LOANCO, LLC

NOW INTO COURT, through undersigned counsel, comes Levy Gardens Partners 2007 LP ("Levy Gardens") and answers the Petition for Executory Process originally filed by the First NBC Bank ("First NBC") in the Civil District Court for the Parish of Orleans for the State of Louisiana at Docket 17-2315, removed to the United States District Court for the Eastern District of Louisiana, now docketed as Civil Action 17-6652, the Honorable Nannette Jolivette Brown presiding.

### I. FACTUAL BACKGROUND

1. Prior to April 28, 2017, Levy Gardens had a banking relationship with First NBC as a consequence of which Levy Gardens was either a maker, endorser or guarantor of various loans to other parties, including Regina Heisler ("Regina"), the Succession of Frederick P. Heisler ("Heisler Succession"), Henry L. Klein ("Klein"), Gary R. Gibbs ("Gibbs"), Coastal Phoenix Investments ("CPI") and HP South, LLC ("HP South") ("Related Parties").

2. On April 28, 2017, John Ducrest, Commissioner of the Louisiana Office of Financial Institutions ("OFI"), filed an action to close First NBC on the grounds that it had been engaging in a pattern of "...unsafe and unsound banking practices..." in violation of federal law set forth at Title 12 of the United States Code of Federal Regulations, 12 CFR Part 337, and Title 12 of the United States Code, 12 U.S.C. § 375(a)(4), 375(b), 1463(a)(1), 1816, 1818(a), 1818(b), 1819, 1820(d), 1828(j)(2) and 1831, *In re: First NBC Bank*, Docket No. 17-4057, Division N ("the Liquidation lawsuit").

3. According to a report from the Office of the Inspector General ("OIG"), the unsafe and unsound banking practices included large lending relationships with borrowers who put up little or no collateral, followed by the use of collateral belonging to one borrower in order to conceal delinquencies of other defaulted borrower, www.fdicoig.gov.

4. On April 28, 2017, OFI surrendered all assets of First NBC to the Federal Deposit Insurance Company ("FDIC") for liquidation, including loans by First NBC under the following Original Loan Numbers involving Related Parties ("Nine-Loan Package"):

| | |
|---|---|
| 1000013304 | Levy Gardens |
| 1000007496 | HP South |
| 1000133897 | Heisler Succession |
| 1000157008 | Heisler Succession |
| 1000114592 | Heisler Succession |
| 1000125119 | Heisler Succession |
| 1000066764 | Heisler Succession |
| 1000022434 | Heisler Succession |
| 1000086399 | Regina |

5. Each loan in the Nine-Loan Package was cross-collateralized with the other loans and guaranteed by the Related Parties, meaning that any and all actions by *each* member of the Related Parties was intended to benefit the other members.

6. On May 10, 2017, Klein met with the FDIC at 210 Baronne Street and was advised that the amount due on the Nine-Loan Package exceeded $10 million, which was a total surprise because none of the Related Parties had borrowed the money allegedly owed.

7. Beginning May 10, 2017, Klein investigated and discovered that high-level officers at First NBC had allowed Gibbs and CPI to borrow ONE HUNDRED SIXTY-ONE MILLION, SIX HUNDRED THIRTY-TWO THOUSAND, SIX HUNDRED THIRTY-TWO DOLLARS using property belonging to the Related Parties as collateral:

**$161,632,652**

8. Because of the high probability that the FDIC would sell the Nine-Loan Package to third parties as in the wake of the S&L Crisis and the birth of Resolution Trust Corporation ("RTC") in the 1980's, Klein took steps to protect the Related Parties by filing at least the following pleadings:

9. On October 21, 2017, the Heisler Succession, Regina Heisler and Levy Gardens filed a <u>Motion for Declaratory Relief Enforcing the Right of Litigious Redemption Applying the *Ex Turpi Causa* Doctrine with Reservation of Rights for Supplemental Relief.</u>

10. In the October 21, 2017 Motion for Declaratory Relief, paragraphs 4, 5, 6 and 7 set forth why all loans in the Nine-Loan Package were **UNENFORCEABLE**, making any purchase of the Nine-Loan Package a purchase of *litigious* rights; paragraphs 8, 9 and 10 articulated why the paper was toxic and paragraphs 11 and 12 stated a *specific* claim pursuant to Louisiana Civil Code Article 2652.

11. On information and belief, when the October 21, 2017 Motion for Declaratory Relief was filed, Girod was conducting its due diligence and must be held to have had actual or constructive knowledge of the defaults and manifest corruption at First NBC Bank, meaning that Girod will *never* be a "...holder in due course..."

12. On February 2, 2018, the Heisler Succession and Regina Heisler filed a .<u>Request for Authority to Present a Freedom of Information Act Request to the FDIC</u>; at paragraphs 4 and 5, mention the Succession's rights of litigious redemption were made, stating that

> "On a date unknown and on terms unknown, the FDIC has sold the loans to a third party, which has refused to provide any significant documentation regarding loan history and/or the sale of the loans."

13. On May 5, 2018, the Heisler Succession filed a <u>Motion for an Expedited Hearing on the Succession's Prior Requests for Declaratory Judgment Naming Capital Crossing Servicing Company, Inc., Girod LoanCo, LLC. and Charles Schwab & Company, Inc. as Parties Claiming an</u>

Interest Pursuant to LCCP Article 1880.

14. In that pleading, at paragraphs 10, 11, 12, 13 and 14, the right of litigious redemption was pled as well as the fact that the loans were unenforceable; a rule to show cause was hand-delivered to David Halpern, who claimed that he did not have authority to accept service.

15. On August 2, 2018, Regina Heisler, individually and on behalf of the Heisler Succession filed a Response to Schwab Concursus and an Incorporated Motion to Strike the Girod LoanCo Claim in the consolidated cases; at paragraphs 5, 6, 7, 8 and 9, substantial reasons were articulated why Girod was estopped from making the claim as to any of the assets of the Succession or any of the Related Parties; at paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 we set forth the compelling reasons why further corruption at the bank cast further doubt on any of the accounts at issue.

## II. REFUSAL TO ALLOW INSPECTION OF ORIGINAL NOTES

16. For almost a year after Girod purchased the Nine-Loan Package, the Related Parties asked to see evidence of ownership of the notes and the actual original notes without avail.

17. On August 22, 2018, certain Related Parties filed a Motion to Compel Production of the Original Notes and Evidence of the Price Paid for the Heisler Debt,

18. It was not until mid-January of 2019 that counsel for the Related Parties saw the original notes, none of which had an "allonge" firmly attached or made a part of the notes at issue, and none of which were linked to any collateral or any form of a commercial pledge agreement.

## III. REFUSAL TO DISCLOSE LOAN FILES

19. Given the level of corruption that engulfed First NBC before it was taken down, and given the bloating of alleged debt, all Related Parties were entitled to see the entire files and the complete record at First NBC and so requested on multiple occasions without avail.

20. The evidence contained in the loan files was also relevant to Girod's due diligence prior to purchasing the Nine-Loan Package, which had enough compelling evidence to eliminate Girod as a "...holder in due course..."

## IV.   REFUSAL TO DISCLOSE DOCUMENTATION
## OF ARM'S LENGTH PURCHASE

21.     Girod allegedly purchased the Nine-Loan Package on November 13, 2017, but consistently refused to show evidence of the purchase or to document same; Girod was never a "...holder in due course..." and therefore the requests for proof of ownership were reasonable and should never been withheld.

## V.   *EX TURPI CAUSA NON ORITUR ACTIO*

22.     Pursuant to principles set forth in the publication, *The Rights of Parties to Illegal Transactions*, no party which has been a participant of an illegal transaction can move a court of justice to aid him in profiting from the illegality; it is a concept not dissimilar from the adminition that no one who eats from "the fruit of a poisoned tree' will survive the meal.

23.     The direct translation of the doctrine teaches that "...from a dishonorable cause no right of action can arise...", meaning that a court of law will *never* lend a hand to a party pleading a dishonorable cause.

24.     First NBC committed crimes; the FDIC took toxic paper and packaged it in the same manner as the Nine-Loan Package in the case at bar.

25.     Girod purchased the Nine-Loan Package without recourse and with full knowledge that the paper it purchased was toxic.

## VI.   NOVATIONS WITHOUT CONSIDERATION

26.     As a matter of course in the process of hiding delinquent debt from regulators, First NBC issued new notes to cover old notes which were not marked **"PAID"** and returned to any of the Related Parties, making the new notes unenforceable.

27.     Loan 6399 (the Schwab account loan) was executed on February 27, 2015 to pay off Loans 6322 and 2803, but those two notes were *never* returned to any Related Party marked **"PAID"**, resulting in a novation without consideration.

28.     Loan 4592 paid off Loans 2826 and 4383, but those two old notes were *never* returned to any Related Party marked **"PAID"**, resulting in a novation without consideration.

29.     Loan 3897 paid off Loan 6298, but that old note was *never* returned to any Related Party marked **"PAID"**, resulting in a novation without consideration.

30. Loan <u>7008</u> was never funded; it was used by the bank to hide non-performing loans and to perpetrate further fraud.

## VII. IN GLOBO EXHIBIT A

31. On January 29, 2019, counsel for the Related Parties submitted a complete report to Girod as to the various reasons the notes allegedly owned by Girod were *unenforceable* as having been used in a criminal enterprise.

32. Levy Gardens hereby includes <u>In Globo Exhibit A</u> and incorporates same as if written out herein fully and *in extenso*.

## VIII. IN GLOBO EXHIBIT B

33. In the course of litigating matters between Girod LoanCo, the Heisler interests and the interests of the Related Parties, it has become necessary to file evidence of unenforceability in the Civil District Court for the Parish of Orleans in Schwab versus Girod LoanCo and Regina Heisler, incorporated herein as if written out fully and *in extenso*, marked <u>In Globo Exhibit B.</u>

## IX. CALLOUS INSENSITIVITY TO REGINA HEISLER AND THE MEMBERS OF THE HEISLER FAMILY

34. Regina Heisler is 76-years old and is in frail condition; when Fred Heisler died, he left her a reasonable portfolio to take her through her final years; that portfolio has been effectively seized by Girod and this entire debacle has destroyed the family.

35. The most egregious aspect of the conduct by Girod has been the ignoring of requests to see what it was that Girod had to justify its claims.

36. The following list of e-mails to Girod's counsel is unforgiveable, callous and insensitive to Regina Heisler and the family:

1. **12/07/17 @ 8:34 am:** Do you have any documentation on the 9 loans? Stated differently, If you were going to trial today, what proof would you submit?

2. **12/07/17 @ 12:01 pm:** You must have some documents I can look at.

3. **12/07/17 @ 2:49 pm:** Do you have any documentation on the Heisler loans?

| | | |
|---|---|---|
| 4. | 12/11/17 @ 10:01 am: | To Eric Lockridge: I really need to see what you have and how much you contend is owed. I have been chasing this issue for 6 months....Please give me a time to go to David's office and see whatever documentation you have. |
| 5. | 12/15/17 @ 11:47 am: | It has now been at least 8 months (sic) since I began looking for documentation and have received nothing. |
| 6. | 12/18/17 @ 9:50 am: | How close are we to getting a look at the histories of these loans? |
| 7. | 12/20/17 @ 1:14 pm: | Please get me the credit/debit history on each loan you expect the Succession to pay. |
| 8. | 12/20/17 @ 2:34 pm: | This is torture. |
| 9. | 01/02/18 @ 10:05 am: | Surely you have some supporting documentation by now. Can you tell me what your client paid? |
| 10. | 01/03/18 @ 9:09 am: | David and Eric: I would like to come over and see what documentation you have to support your claims. Once again, I have been seeking this information since April of 2017 and must reach an understanding asap. |
| 11. | 01/09/18 @ 1:14 pm: | I have to do something!!!! If you have no documentation, please say so; If you have some documentation, please say so; If you have lousy documentation, please say so. |
| 12. | 01/10/18 @ 1:11 pm: | Quo Vadimus? |
| 13. | 01/24/18 @ 1:47 pm: | Do you have paperwork for me to see? |
| 14. | 01/30/18 @ 1:43 pm: | Do you have any actual original notes? Where are they physically? |
| 15. | 01/31/18 @ 8:41 am: | Does David Silverstein or anyone have the original notes Capital purchased? |
| 16. | 02/26/18 @ 10:16 am: | The FDIC has responded to my FOIA request with nothing. They have no record of supporting documentation and (they say) no idea what your client paid for the loans. |

| | | |
|---|---|---|
| 17. | 03/03/18 @ 5:21 pm: | Does this company exist? I couldn't find them in any jurisdiction on earth. |
| 18. | 03/05/18 @ 1:18 pm: | Does Girod LoanCo exist? Will David accept pleadings and/or a subpoena? |
| 19. | 03/09/18 @ 1:22 pm: | I want to go to Boston to inspect the records on the loans sold to Girod LoanCo (which I found in Delaware) Will you agree without a court order? |
| 20. | 03/12/18 @ 9:07 am: | I requested your confirmation as to my going to Boston to inspect the records your client has regarding each loan as to which the Heislers are involved....TIME IS OF THE ESSENCE....Please give me a time and date at your client's offices in Boston to conduct the inspection. |
| 21. | 03/12/18 @ 10:29 am: | Do you have THE ORIGINAL OF ANY NOTE? |
| 22. | 03/12/18 @ 11:20 am: | I want to go to Boston and look at the loan files, however sparse. |
| 23. | 03/14/18 @ 4:31 pm: | I have been trying to see what supporting documentation your client has on the loans allegedly purchased from the FDIC. YOU HAVE YET TO PROVIDE DOCUMENTATION OR GIVE ME A TIME AND DATE WHEN I CAN GO TO BOSTON TO SEE THE RECORDS. |
| 24. | 04/17/18 @ 2:33 pm: | Am I correct that you have filed NO pleadings in the interpleader. Are you? |
| 25. | 04/19/18 @ 5:56 pm: | It seems inevitable that your client will be required to show me everything it has in the form of documentation for each loan. Same as to the price Girod paid. Why do we have to go through all this rigmarole? |
| 26. | 06/20/18 @ 4:49 pm: | For approximately the 20th time, demand is made for CC or Girod to provide al documents which support your claim. |
| 27. | 06/22/18 @ 2:26 pm: | The concursus has been filed and you will have to reveal by what authority you have any right to any of the collateral, including the cash from the Schwab |

|     |                        |                                                                                                                                                                                                                                                                                                                                           |
|-----|------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|     |                        | Account.  Please send me the paperwork that establishes when and how Girod owns the rights or the collateral.                                                                                                                                                                                                                             |
| 28. | 07/20/18 @ 11:37 am:   | You filed, but do you have proof?                                                                                                                                                                                                                                                                                                         |
| 29. | 07/23/18 @ 10:12 am:   | David: There were no documents with your claim. Please produce immediately all documents which give Girod LoanCo a legal right to make the claim. I have been diligently seeking this information for over a year from the FDIC and from Girod LoanCo.                                                                                    |
| 30. | 07/27/18 @ 3:38 pm:    | Eric and David: You have filed a claim in the concursus at 18-4693 WITHOUT (i) presenting any documents which establish your alleged interest in the Heisler assets, (ii) how you obtained that interest allegedly on November 13, 2017, (iii) what you paid for the alleged interest and (iv) why you haven't provided the Succession or Regina Heisler with documentation despite repeated requests. |
| 31. | 07/27/18 @ 3:54 pm:    | Mrs. Heisler is a 76-year-old widow whose assets were used to fund shill loans. Girod LoanCo has her entire estate and assets tied up with bogus loans that are TOXIC and UNENFORCEABLE because they came out of the First NBC Bank criminal activity that resulted in the collapse of the bank. You cannot document your claim.          |
| 32. | 07/27/18 @ 3:45 pm:    | Girod LoanCo is a one-year-old company born in April of 2017 to purchase toxic debt at deep discounts and attempt to gouge the alleged debtor. We have attempted to obtain documentation of your rights without avail for months.                                                                                                         |
| 33. |                        | **PLEASE WITHDRAW YOUR CLAIM.**                                                                                                                                                                                                                                                                                                           |

*Remainder of page left blank*

## X.   ANSWER TO ORIGINAL PETITION FOR EXECUTORY PROCESS

37. Now answering the original petition for executory process, Levy Gardens responds as follows, provided however, that the responses are made as to First NBC only, it being the position of Levy Gardens that Girod has no rights to proceed as a matter of fact and as a matter of law (all answers applicable to the date of the filing of the Petition by Fitst NBC):

| | |
|---|---|
| I. | Paragraph I is ADMITTED. |
| II. | Paragraph II is ADMITTED. |
| III. | Paragraph III is ADMITTED. |
| IV. | Paragraph IV is ADMITTED. |
| V. | Paragraph V is ADMITTED. |
| VI. | Paragraph VI is ADMITTED. |
| VII. | Paragraph VII is ADMITTED. |
| VIII. | Paragraph VIII is ADMITTED. |
| IX. | Paragraph IX is ADMITTED. |
| X. | Paragraph X is ADMITTED. |
| XI. | Paragraph XI is ADMITTED. |
| XII. | Paragraph XII is ADMITTED. |
| XIII. | Paragraph XIII is ADMITTED. |
| XIII. | Paragraph XIII is ADMITTED. |
| XIV. | Paragraph XIV is ADMITTED. |
| XV. | Paragraph XV is ADMITTED. |
| XVI. | Paragraph XVI is ADMITTED. |
| XVII. | Paragraph XVII is ADMITTED. |
| XVIII. | Paragraph XVIII is ADMITTED. |
| XIX. | Paragraph XIX is ADMITTED. |

XX.     Paragraph XX is ADMITTED.

XXI.    Paragraph XXI is ADMITTED.

XXII.   Paragraph XXII is ADMITTED.

XXIII.  Paragraph XXIII is ADMITTED.

### XI. LEVY GARDENS' RIGHTS AGAINST LISKOW & LEWIS AND LEWIS TITLE

38. Levy Gardens avers that First NBC had the right to proceed with the foreclosure at the time the Petition was filed.

39. Levy Gardens avers, however, that it purchased a Lender's Title Policy from Lewis Title Insurance Company, a captive insurance agency which was selling a product that is not "insurance" and therefore, Lewis Title and Liskow & Lewis, which kept 80% of the premiums paid by Levy Gardens, must reimburse Levy Gardens for all payments made on the subject loan.

### XII. COMPULSORY COUNTERCLAIM

40. As a consequence of the unjustified failure to make disclosures as set forth in the 33 instances at paragraph 36, *supra*, and as a consequence of the unjustifiable impairment of the Right of Litigious Redemption, Levy Gardens claims damages in the full and true sum of FIVE MILLION DOLLARS, not including punitive damages and compensatory damages for violations of Federal Laws including the Federal and Louisiana Fair Debt Collection Practices Acts, 15 U.S.C. § 1692 and Louisiana Revised Statutes 9:3562.

Respectfully submitted,

/s/ *Henry L. Klein*
HENRY L. KLEIN (7440)
844 Baronne Street
New Orleans, LA 70113
(504) 301-3027
henryklein44@gmail.com