# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FIRST NBC BANK**                               **CIVIL ACTION**

**VERSUS**                                       **NO. 17-6652**

**LEVY GARDENS PARTNERS 2007, LP**               **SECTION: "G"(2)**

## ORDER AND REASONS

Pending before the Court is Girod LoanCo, LLC's ("Girod") "Motion for Summary Judgment."[1] In the motion, Girod argues that summary judgment is appropriate because: (1) Defendant Levy Gardens Partners 2007, LP ("Levy Gardens") admits that the Promissory Note at issue is in default; (2) Levy Gardens does not dispute the validity of the signatures on the Note; and (3) Levy Gardens does not have a valid defense to payment of the Note.[2] Defendant has not filed any opposition to the motion.[3] This Court has authority to grant a motion as unopposed, although it is not required to do so.[4] Having considered the motion, the memorandum in support, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 134.

[2] Rec. Doc. 134-3 at 1.

[3] On September 26, 2019, Levy Gardens attempted to file an opposition to the motion for summary judgment. Rec. Doc. 138. The filing was marked deficient by the Clerk of Court, and Levy Gardens did not remedy the deficiency. Therefore, Levy Gardens never properly filed an opposition to the instant motion.

[4] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993).

# I. Background[5]

Levy Gardens executed a promissory note dated April 15, 2008, payable to First NBC Bank of New Orleans, LA ("First NBC"), in the original principal amount of $3,100,000.00 ("Note One").[6] Note One was renewed and/or extended by a Second Promissory Note ("Note Two") dated September 26, 2008; Note Two memorialized Levy Gardens' promise to pay First NBC $5,126,000.00 in one payment of all outstanding principal and interest due September 26, 2010, with interim monthly payments of all accrued unpaid interest due on the 15th day of each month until paid in full.[7] The maturity date of Note Two was extended to April 24, 2013, by a Change in Terms Agreement ("Change in Terms Agreement One") dated April 25, 2012.[8] The maturity date of Note Two was again extended until May 23, 2018, by an additional Change in Terms Agreement ("Change in Terms Agreement Two") dated May 23, 2013.[9] Note One,[10] Note Two,[11] the Change in Terms Agreement One,[12] and the Change in Terms Agreement Two[13] collectively constitute the promissory note (the "Promissory Note") at issue in this case.

---

[5] These facts are drawn, in part, from the summary judgment record. In compliance with Local Rule 56.1, Girod included a concise Statement of Uncontested Facts. *See* Rec. Doc. 134-2. This Court's Local Rules mandate that the party opposing summary judgment "must include a separate and concise statement of the material facts which the opponent contends present a genuine issue." *See* Local Rule 56.2. Here, Levy Gardens failed to file any such statement to controvert the plaintiff's submission and, therefore, "[a]ll material facts in the moving party's statement will be deemed admitted, for purposes of the motion." *See id.*

[6] Rec. Doc. 134-3 at 2 (citing Rec. Doc. 134-5).

[7] Rec. Doc. 134-6.

[8] Rec. Doc. 134-7.

[9] Rec. Doc. 134-8.

[10] Rec. Doc. 134-5.

[11] Rec. Doc. 134-6.

[12] Rec. Doc. 134-7.

[13] Rec. Doc. 134-8.

In connection with Note One, Levy Gardens executed the "Multiple Indebtedness Mortgage" (the "MIM") which acknowledged the indebtedness evidenced by Note One.[14] The MIM was executed to secure repayment of any additional advances First NBC may have made on behalf of Levy Gardens.[15] A "Supplement to and Acknowledgement of Multiple Indebtedness Mortgage" (the "Supplement to the MIM") dated September 26, 2008 granted First NBC a mortgage and security interest over "Additional Mortgaged Property."[16]

In 2008, Levy Gardens purchased property (the "Property") located in New Orleans.[17] After the purchase, certain third parties sued Levy Gardens in state court to enforce a 1985 zoning ordinance.[18] Their lawsuit was successful and, as a result, Levy Gardens was unable to use the Property as it had intended.[19] On March 14, 2017, First NBC brought a foreclosure action by executory process against Levy Gardens in the Civil District Court for the Parish of Orleans, State of Louisiana.[20] In that action, Levy Gardens asserted a third-party demand against Lewis Title Company, Inc. and Liskow & Lewis, PLC (collectively, the "Liskow Defendants").[21]

On April 28, 2017, First NBC was closed by the Louisiana Office of Financial Institutions, and the FDIC-R was named receiver.[22] On July 11, 2017, the FDIC-R filed a Motion for Substitution of Parties in the state action, as the FDIC-R notified parties that it succeeded to all

---

[14] Rec. Doc. 134-3 at 3 (citing Rec. Doc. 134-9).

[15] Rec. Doc. 134-9 at 2.

[16] Rec. Doc. 134-10 at 1–2.

[17] Rec. Doc. 6-1 at 1.

[18] *Id.*

[19] *Id.*

[20] *See* Rec. Doc. 1-2; *see also* Rec. Doc. 13-1 at 1.

[21] Rec. Doc. 1-3.

[22] Rec. Doc. 13-1 at 1.

rights, titles, powers, and privileges of First NBC.[23] Moreover, on July 11, 2017, the FDIC-R

filed a Notice of Removal, removing the state action to this Court pursuant to 12 U.S.C.

§ 1819(b)(2)(B) and 28 U.S.C. § 1441.[24]

On October 5, 2017, this Court granted a motion to stay this matter pending exhaustion

of administrative remedies filed by FDIC-R.[25] On December 5, 2017, this Court granted a

"Motion to Substitute Party Plaintiff," substituting Girod for First NBC Bank pursuant to Federal

Rule of Civil Procedure 25(c).[26] This Court found that Rule 25(c) provides that when there is a

transfer of interest, the Court may substitute the transferee as the party litigant.[27] Further, this

Court found that Girod was the holder of the note described in and attached to the state-court

Petition that initiated this civil action, having acquired same from the FDIC-R as Receiver for

First NBC.[28] The Court found that Girod should be substituted as the party plaintiff due to the

closure of First NBC Bank, and the fact that Girod is the current holder of the note that forms the

basis of this litigation.[29]

On September 18, 2018, upon a motion by Levy Gardens, the Court reopened the case.[30]

On April 12, 2019, the Court granted a "Rule 12(b)(6) Motion to Dismiss"[31] filed by the Liskow

Defendants because this Court had previously issued a final judgment dismissing the same claims

---

[23] *See* Rec. Doc. 1-4; *see also* Rec. Doc. 13-1 at 2.

[24] Rec. Doc. 1; *see also* Rec. Doc. 13-1 at 2.

[25] Rec. Doc. 57.

[26] Rec. Doc. 61.

[27] *Id.* at 2.

[28] *Id.*

[29] *Id.*

[30] Rec. Doc. 66.

[31] Rec. Doc. 6.

against Levy Gardens and a party in privity with Liskow Defendants.[32] On April 29, 2019, the Court entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b) against Levy Gardens and in favor of the Liskow Defendants, dismissing all claims that Levy Gardens had asserted against the Liskow Defendants in this action with prejudice.[33] On May 7, 2019, Levy Gardens filed a notice of appeal.[34] On July 19, 2019, the United States Court of Appeals for the Fifth Circuit dismissed the appeal for want of prosecution.[35] On August 16, 2019, the Fifth Circuit denied Levy Gardens' motion to reinstate the appeal.[36] On October 28, 2019, Levy Gardens filed a "Motion to Direct the Clerk to File a Petition for a Writ of Certiorari Out of Time" before the United States Supreme Court.[37] On November 25, 2019, the Supreme Court denied the motion.[38]

On September 10, 2019, Girod filed the instant motion for summary judgment.[39] On September 17, 2019, Levy Gardens filed an "Unopposed Motion to Extend Time to Respond to Motion for Summary Judgement Field by Girod."[40] The Court granted Levy Gardens' motion and stated that any opposition by Levy Garden must be filed by September 23, 2019.[41] Levy Gardens has not filed any opposition to the motion.[42] On September 26, 2019, Girod filed a

---

[32] Rec. Doc. 111.

[33] Rec. Doc. 116.

[34] Rec. Doc. 119.

[35] Rec. Doc. 129.

[36] Rec. Doc. 132.

[37] Rec. Doc. 154-1.

[38] *Levy Gardens Partners 2007, L.P. v. Lewis Title Co., Inc., et al.*, __ S. Ct. __, 2019 WL 6257400 (Nov. 25, 2019).

[39] Rec. Doc. 134.

[40] Rec. Doc. 135.

[41] Rec. Doc. 136.

[42] On September 26, 2019, Levy Gardens attempted to file an opposition to the motion for summary judgment. Rec. Doc. 138. The filing was marked deficient by the Clerk of Court, and Levy Gardens did not remedy

"Notice of No Opposition to Motion for Summary Judgment."[43]

## II. Parties' Arguments

### A. *Girod's Arguments in Support of the Motion for Summary Judgment*

In support of the motion, Girod first argues that this proceeding is ripe for summary judgment.[44] Girod next contends that it has an indisputable legal right to enforce the Note and the MIM.[45] Girod further argues that Levy Gardens admits all material allegations in the Petition.[46] Lastly, Girod contends that Levy Gardens cannot state a defense to payment of the promissory Note based on alleged wrongdoing by First NBC.[47]

First, Girod argues that this proceeding is ripe for summary judgment.[48] Girod contends that in a suit on a promissory note, "summary judgment is appropriate when the maker's signature on the note is proved or admitted, the holder produces the note, and the maker cannot produce evidence establishing a defense to payment."[49] Girod contends that under this legal scheme, once the holder of the note establishes that the signature is genuine, the burden shifts to the defendant to present a triable issue of fact.[50] Girod argues that to satisfy this burden, a defendant must produce evidence that is both admissible and contains specific factual details.[51] Girod contends

---

the deficiency. Therefore, Levy Gardens never properly filed an opposition to the instant motion.

[43] Rec. Doc. 137.

[44] Rec. Doc. 134-3 at 6.

[45] *Id*. at 7.

[46] *Id*. at 9.

[47] *Id*.

[48] *Id*. at 6.

[49] *Id*. (citing *Bankers Trust Co. of Cal., NA v. Boydell*, 46 F. App'x. 731, *3 (5th Cir. 2002)).

[50] *Id*. (citing *Boydell*, 46 F. App'x. 731, *3).

[51] *Id*.at 6–7 (citing *Equipment, Inc. v. Anderson Petroleum, Inc.*, 471 So. 2d 1068, 1070 (La. App. 3 Cir.

that claims that are separate and unrelated to the question of liability and claims without factual support are insufficient to overcome summary judgement.[52] Girod argues that there is no dispute about Levy Gardens' signature on the Note, the MIM, the Supplement, or any other relevant document.[53] Furthermore, Girod argues that the Fifth Circuit has explicitly recognized that suits on promissory notes are especially appropriate for disposition by summary judgment, given the relatively simple requirements.[54]

Second, Girod contends that it has an indisputable legal right to enforce the Note and MIM.[55] Girod reviews the history of the Note at issue.[56] Girod argues the Note is made payable "to the Order of First NBC Bank."[57] Girod contends that the Receivership Order transferred title of the Note to the FDIC-R.[58] Girod argues that the Allonge states that the FDIC-R indorsed, transferred, and assigned the Note to Girod.[59] Girod contends that the FDIC-R's indorsement makes Girod a "holder" of the Note, and thereby entitled to enforce the Note, which remains unpaid and past due.[60] Regarding the MIM, Girod argues the "FDIC-R's assignment of the Note to Girod necessarily included an assignment of the accessory rights created by the MIM" and that

---

1985)).

[52] *Id*.at 7.

[53] *Id*.

[54] *Id*.at 6.

[55] *Id*.at 7.

[56] *Id*.at 7–8.

[57] *Id*. at 7 (citing Rec. Doc. 134-6).

[58] *Id*. at 7–8 (citing Rec. Doc. 134-14).

[59] *Id*. at 8 (citing Rec. Doc. 134-6).

[60] *Id*. (citing La. R.S. § 10:3-301).

the "FDIC-R assigned the MIM to Girod via the Mortgage Assignment."[61] Therefore, Girod contends it is entitled to enforce the Note.[62]

Third, Girod argues Levy Gardens admits all material allegations in the Petition.[63] Girod contends that Levy Gardens admits it signed the Note and the MIM, and that the Note is in default for non-payment.[64] Therefore, Girod argues summary judgment is appropriate.[65]

Fourth, Girod contends that Levy Gardens cannot state a defense to payment of the promissory note based on alleged wrongdoing by First NBC.[66] Girod argues that this Court does not have jurisdiction to hear claims regarding First NBC's alleged wrongful conduct and that such conduct does not excuse payment.[67] Girod contends FIRREA establishes a statutorily-mandated administrative process for any claim arising from an alleged bad act by a bank taken over by the FDIC-R.[68] Therefore, Girod argues this Court does not have jurisdiction to hear such claims.[69] Girod contends that "[w]hen the FDIC-R is appointed as the Receiver of a failed institution, it succeeds to all of the institution's rights, titles, powers, privileges, assets, and liabilities."[70] Girod argues that under the statutory regime, the FDIC-R is obligated to pay all valid claims consistent

---

[61] *Id.* (citing Rec. Doc. 134-11).

[62] *Id.*

[63] *Id.* at 9.

[64] *Id.* (citing Rec. Doc. 134-17).

[65] *Id.* at 9.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 9–10.

[69] *Id.* at 10.

[70] *Id.*

with federal law.[71]

Girod contends a potential claimant who wishes to make a claim against a failed institution, its assets, or the FDIC-R must follow the administrative procedure established by FIRREA; failure to follow this procedure results in a jurisdictional bar in any court to review the claim.[72] Girod argues that the first step in that process is to file a claim with the FDIC-R.[73] Here, Girod contends this Court does not have jurisdiction to hear any claims by Levy Gardens related to the alleged wrongdoings of First NBC because Levy Gardens never submitted a claim regarding First NBC's alleged wrongdoing.[74] Lastly, Girod argues that Levy Gardens has offered no evidence of wrongdoing by First NBC.[75] Rather, Girod contends that Levy Gardens relies only on statements from its attorney and has failed to explain how any alleged wrongdoing by First NBC unwinds its obligation to pay the amount due under the Note.[76] Therefore, Girod argues there is no genuine issue of material fact, and summary judgment is appropriate.[77]

### III. Legal Standard

#### A. *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78] When assessing whether a dispute as to any material fact exists,

---

[71] *Id.*

[72] *Id.* at 11 (citing 12 U.S.C. § 1821(d)(5)– (8)).

[73] *Id.*

[74] *Id.* at 12–13.

[75] *Id.* at 13.

[76] *Id.*

[77] *Id.* at 14.

[78] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air*

the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[79] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[80] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[81] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[82]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[83] Thereafter, the nonmoving party should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports his claims.[84] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[85] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by

---

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[79] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[80] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[81] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[82] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[83] *Celotex*, 477 U.S. at 323.

[84] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[85] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[86] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[87] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[88] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[89] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[90]

## IV. Analysis

On a motion for summary judgment, the movant bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[91] Girod contends that it has an indisputable legal right to enforce the Promissory Note.[92] Girod also requests summary judgment in its favor recognizing the enforceability of the security interest granted by the MIM.[93]

---

[86] *Little*, 37 F.3d at 1075.

[87] *Anderson*, 477 U.S. at 248.

[88] *Little*, 37 F.3d at 1075.

[89] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[90] *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

[91] *Celotex,* 477 U.S. at 323.

[92] Rec. Doc. 134-3 at 7.

[93] *Id.*

In a suit for a collection of a promissory note under Louisiana law,[94] the plaintiff establishes a *prima facie* case by establishing that the defendant executed the note and by producing the note.[95] In support of its motion for summary judgment, Girod has included copies of Note One,[96] Note Two,[97] the Change in Terms Agreement One,[98] and the Change in Terms Agreement Two.[99] These documents together constitute the promissory note (the "Promissory Note") at issue in this case.

Girod contends that it has an indisputable legal right to enforce the Promissory Note.[100] Note One states that "Levy Gardens Partners 2007, LP ("Borrower") promises to pay to the order of First NBC Bank ("Lender") . . . the sum of Three Million One Hundred Thousand . . . Dollars . . ."[101] Note One further states that "Borrower [Levy Gardens] will pay this loan in full immediately upon Lender's [First NBC] demand. If no demand is made, Borrower [Levy Gardens] will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 15, 2008."[102] Note One lists Levy Garden as the borrower.[103] Note One bears the signature of Henry L. Klein ("Klein"), a managing member of Levy Gardens, as an authorized

---

[94] Note One states, under the section entitled "Governing Law," that "[t]his note will be governed by federal law applicable to Lender [First NBC] and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflict of law provisions." *See* Rec. Doc. 134-5 at 2.

[95] *See Am. Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989); *Dugas v. Modular Quarters, Inc.*, 561 So.2d 192, 200 (La. Ct. App. 1990).

[96] Rec. Doc. 134-5.

[97] Rec. Doc. 134-6.

[98] Rec. Doc. 134-7.

[99] Rec. Doc. 134-8.

[100] Rec. Doc. 134-3 at 7.

[101] Rec. Doc. 134-5 at 1.

[102] *Id*.

[103] Rec. Doc. 134-5.

signatory of the borrower.[104] Levy Gardens does not present any evidence or legal authority to support a claim that Klein's signature on Note One is not valid.

Note One was renewed and/or extended by a Second Promissory Note ("Note Two") dated September 26, 2008.[105] Note Two memorialized Levy Gardens' promise to pay First NBC $5,126,000.00 in one payment of all outstanding principal and interest due September 26, 2010, with interim monthly payments of all accrued unpaid interest due on the 15th day of each month until paid in full.[106] Note Two lists Levy Garden as the borrower.[107] Note Two bears the signature of Klein, a managing member of Levy Gardens.[108] Levy Gardens does not present any evidence or legal authority to support a claim that Klein's signature on Note Two is not valid. The maturity date of Note Two was extended to April 24, 2013, by a Change in Terms Agreement ("Change in Terms Agreement One") dated April 25, 2012.[109] The maturity date of Note Two was again extended until May 23, 2018, by an additional Change in Terms Agreement ("Change in Terms Agreement Two") dated May 23, 2013.[110] Change in Terms Agreement Two lists Levy Gardens as the borrower and bears the signature of Klein, a managing member of Levy Gardens.[111] Levy Gardens does not present any evidence or legal authority to support a claim that Klein's signature on Change in Terms Agreement Two is not valid.

---

[104] *Id.* at 2.

[105] Rec. Doc. 134-6.

[106] *Id.*

[107] *Id.*

[108] *Id.* at 3.

[109] Rec. Doc. 134-7.

[110] Rec. Doc. 134-8.

[111] *Id.* at 1.

On April 28, 2017, First NBC was closed by the Louisiana Office of Financial Institutions, and the FDIC-R was named receiver.[112] On July 11, 2017, the FDIC-R filed a Motion for Substitution of Parties in the state action, as the FDIC-R notified parties that it succeeded to all rights, titles, powers, and privileges of First NBC.[113] The FDIC-R assigned Note Two to Girod, as memorialized by the Allonge dated November 13, 2017.[114] On December 5, 2017, this Court granted an unopposed "Motion to Substitute Party Plaintiff," substituting Girod for First NBC Bank pursuant to Federal Rule of Civil Procedure 25(c).[115] This Court found that Rule 25(c) provides that when there is a transfer of interest, the Court may substitute the transferee as the party litigant.[116] Further, this Court found that Girod was the holder of the note described in and attached to the state-court Petition (the "Promissory Note") that initiated this civil action, having acquired same from the FDIC-R as Receiver for First NBC.[117] The Court found that Girod should be substituted as the party plaintiff due to the closure of First NBC Bank, and the fact that Girod is the current holder of the Promissory Note that forms the basis of this litigation.[118]

Girod argues that the Promissory Note is in default for non-payment.[119] In its answer dated January 31, 2019, Levy Gardens admitted that is has not made payment on the Promissory Note since September 30, 2016.[120] In further support of its motion for summary judgment, Girod

---

[112] Rec. Doc. 13-1 at 1.

[113] *See* Rec. Doc. 1-4; *see also* Rec. Doc. 13-1 at 2.

[114] Rec. Doc. 134-6 at 4.

[115] Rec. Doc. 61.

[116] *Id.* at 2.

[117] *Id.*

[118] *Id.*

[119] Rec. Doc. 134 at 4.

[120] Rec. Doc. 85 at 10.

provides the declaration of David Silverstein, the Senior Vice President for Capital Crossing Service Company, LLC, the loan servicer for Girod.[121] The declaration indicates that as of August 28, 2019, the amount due under the Promissory Note totaled $281,619.51, excluding legal fees and other costs of collection.[122]

In a suit for collection of a promissory note under Louisiana law,[123] a plaintiff establishes a *prima facie* case by (1) establishing that the defendant executed the note and (2) by producing the note.[124] Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to submit evidence establishing a triable issue of fact on a bona fide defense.[125] "In light of this clear-cut and simple legal scheme, [the Fifth Circuit] has recognized that '[s]uits to enforce promissory notes are especially appropriate for disposition by summary judgment.'"[126]

Here, the Court finds that Girod has established a *prima facie* case to enforce the Promissory Note under Louisiana law. Girod has produced copies of Note One,[127] Note Two,[128] the Change

---

[121] Rec. Doc. 134-4 at 1.

[122] *Id*. at 5.

[123] Note One states, under the section entitled "Governing Law," that "[t]his note will be governed by federal law applicable to Lender [First NBC] and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflict of law provisions." *See* Rec. Doc. 134-5 at 2.

[124] *See Saxena*, 553 So.2d at 842; *see also Bank of America, N.A. v. World of Smiles*, No. CV 16-2874, 2017 WL 750400, at *6 (E.D. La. Feb. 27, 2017) ("In a suit for a collection of a promissory note under Louisiana law, the plaintiff establishes a prima facie case by establishing that the defendant executed the note and by producing the note.").

[125] *Saxena*, 553 So.2d at 842 ("When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."). *See also Dugas*, 561 So.2d at 200 ("Once the note is introduced into evidence, the burden of proof shifts to the debtor to establish the nonexistence, extinguishment, or variance in payment of the obligation") (internal citation omitted).

[126] *Bankers Trust Co. of California, NA v. Boydell*, 46 F. App'x. 731, at *3 (5th Cir. 2002) (quoting *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 276 (5th Cir.1991)); *see also Federal Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988) ("Typically, suits on promissory notes provide fit grist for the summary judgment mill.").

[127] Rec. Doc. 134-5.

[128] Rec. Doc. 134-6.

in Terms Agreement One,[129] and the Change in Terms Agreement Two,[130] which collectively constitute the Promissory Note andmemorialized Levy Gardens' promise to pay a set sum of $5,126,000.00 in one payment of all outstanding principal and interest to First NBC by May 23, 2018.[131] Levy Gardens has admitted that it executed Note One and Note Two.[132] The signature of Henry L. Klein, a managing member of Levy Gardens, appears on Note One,[133] Note Two,[134] the Change in Terms Agreement One,[135] and the Change in Terms Agreement Two.[136] Unless specifically denied in the pleadings, each signature on an instrument is admitted.[137] Levy Gardens does not dispute the validity of it's managing member's signature in its pleadings.[138] Moreover, Levy Gardens does not present any evidence or legal authority to support a claim that the Promissory Note is not valid or to show that Girod is not the holder of the Promissory Note.

Therefore, the Court finds that Girod is entitled to enforce payment of the Promissory Note, unless Levy Gardens can establish a defense by a preponderance of the evidence.[139] Because

---

[129] Rec. Doc. 134-7.

[130] Rec. Doc. 134-8.

[131] *See* Rec. Docs. 134-6, 134-8.

[132] Rec. Doc. 85 at 10.

[133] Rec. Doc. 134-5.

[134] Rec. Doc. 134-6.

[135] Rec. Doc. 134-7.

[136] Rec. Doc. 134-8.

[137] La. Rev. Stat. § 10:3-308(a) ("In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.").

[138] *See* Rec. Doc. 85.

[139] "If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under [La. Rev. Stat. §] 10:3-301, unless the defendant proves a defense or claim in recoupment." La. Rev. Stat. § 10:3-308.

Girod, as holder, has produced the promissory note, and because Levy Gardens does not dispute the authenticity of the signatures, Girod has satisfied its summary judgment burden.[140] The burden shifts to Levy Gardens to establish the existence of a material fact, which would preclude the Court from granting summary judgment.

Under Louisiana Revised Statute § 10:3-308, Levy Gardens may successfully defeat summary judgment if it establishes, by a preponderance of the evidence, the grounds of defenses raised in its Answer.[141] Bare recitals of defenses without factual evidence or argument offered in support are insufficient to defeat summary judgment.[142] Louisiana Revised Statute § 10:3-305 permits raising any defenses that would be available against a simple contract enforcement suit.[143] Here, Levy Gardens has failed to meet its burden to prove any defenses by a preponderance of the evidence. Levy Gardens failed to submit an opposition to the motion for summary judgment raising any disputed issues of material fact and has failed to provide any evidence in support of its defenses. Levy Gardens' Answer likewise provides only a bare recital of asserted defenses without factual evidence or argument offered in support.[144] Levy Gardens admits there is an

---

[140] *See Premier Bank, Nat'l Ass'n v. Percomex, Inc.*, 92-243 (La. App. 3 Cir. 3/3/93), 615 So.2d 41, 43 ("Once the plaintiff, the holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his case by mere production of the note and is entitled to recover in the absence of any further evidence."); *Saxena*, 553 So.2d at 842 ("When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."). *See also Dugas*, 561 So.2d at 200 ("Once the note is introduced into evidence, the burden of proof shifts to the debtor to establish the nonexistence, extinguishment, or variance in payment of the obligation") (internal citation omitted).

[141] *See Wright v. Blue*, No. 16-9405, 2016 WL 4799102, at *4 (E.D. La. Sept. 13, 2016) (Brown, J.) (citing *Saxena*, 553 So. 2d at 842; *Bank of America Nat. Trust & Sav. Ass'n v. Reeves*, Nos. 94-2580, 94-3692, 1997 WL 537691, at *3 (E.D. La. Aug. 25, 1997) (Wilkinson, Mag.)).

[142] *Bank of America*, 2017 WL 750400, at *7.

[143] *See id.;* La. Rev. Stat. § 10:3-302. If Girod is found to be a holder in due course, then Levy Gardens is limited to asserting only "real" defenses provided for in Section 305. *See Saxena*, 553 So. 2d at 842 ("Because Saxena has not established by a preponderance the available defenses allowed against a holder under [La. Rev. Stat. §] 10:3–306, we need not consider the question of whether the bank's status is that of a holder in due course.").

[144] Rec. Doc. 85.

outstanding balance due on the Promissory Note.[145] However, Levy Gardens does not assert any facts or point to any evidence to contest Girod's evidence of the amount due.

As the Fifth Circuit stated in *Galindo v. Precision Am. Corp.*, unsupported allegations of conclusory facts and conclusions of law are insufficient to defeat a summary judgment motion.[146] A party "may not rest upon mere allegations contained in the pleadings," but rather must articulate the specific facts showing the existence of a genuine issue of material fact for trial.[147] Here, Levy Gardens has not articulated specific facts demonstrating that the amount due under the Promissory Note is in dispute. Therefore, the Court finds that Levy Gardens has not met its burden to establish any defense to enforcement of the promissory note by a preponderance of the evidence.

Girod also requests summary judgment in its favor recognizing the enforceability of the security interest granted by the Multiple Indebtedness Mortgage (the "MIM").[148] In connection with Note One, Levy Gardens executed the MIM, dated April 15, 2008, which acknowledged the indebtedness evidenced by Note One.[149] The MIM was executed to secure repayment of any additional advances First NBC may have made on behalf of Levy Gardens.[150] The MIM encumbers certain immovable property described in the MIM.[151] A "Supplement to and Acknowledgement of Multiple Indebtedness Mortgage" (the "Supplement to the MIM") dated September 26, 2008 granted First NBC a mortgage and security interest over "Additional

---

[145] Rec. Doc. 85.

[146] 754 F.2d 1212, 1216 (5th Cir. 1985).

[147] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986)).

[148] Rec. Doc. 134-3 at 7.

[149] Rec. Doc. 134-9.

[150] *Id*. at 2.

[151] *Id*. at 2, 15.

Mortgaged Property."[152] Girod argues that the FDIC-R's assignment of the Promissory Note included an assignment of the collateral rights granted by the MIM.[153] Girod further argues that the FDIC-R memorialized the assignment by an "Assignment of Multiple Indebtedness Mortgage (the "Mortgage Assignment")."[154]

Here, Levy Garden does not dispute any facts regarding the security interest granted by the MIM. Levy Gardens admits that it executed the MIM.[155] Under Louisiana law, "the assignee 'steps into the shoes' of the assignor and acquires only those rights possessed by the assignor at the time of the assignment."[156] Louisiana law generally supports free assignment.[157] Furthermore, "[t]he assignment of a right includes its accessories such as security rights."[158] This provision "makes clear that assigning a promissory note also transfers the mortgage securing the note."[159] Lastly, "an assignment is valid even without the debtor's consent, since, as a general rule, the identity of the creditor should be immaterial to the debtor who owes the performance involved."[160] Therefore, the Court finds that the undisputed facts in the record indicate that Girod has the right to enforce the security interest created by the MIM, and summary judgment is warranted in favor of Girod on this issue as well.[161]

---

[152] Rec. Doc. 134-10 at 1-2.

[153] Rec. Doc. 134-3 at 4 (citing La. Civ. Code art. 2645, La. R.S. § 10:9-203).

[154] *Id*. at 4-5 (citing Rec. Doc. Rec. Doc. 134-11).

[155] Rec. Doc. 85 at 10.

[156] *Conerly Corp. v. Regions Bank*, 668 F. Supp. 2d 816, 823 (E.D. La. 2009).

[157] La. Civ. Code art. 2642 ("All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor.").

[158] La. Civ. Code art. 2645.

[159] *KeyBank Nat. Ass'n v. Perkins Rowe Associates*, LLC, 823 F. Supp. 2d 399, 406 (M.D. La. 2011).

[160] La. Civ. Code art. 2642, comment (b).

[161] *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. *See also, e.g., Bank of America, N.A. v. Garden Dist. Pet*

Based on the forgoing, the Court finds that there are no genuine issues of material fact at issue here. Girod has submitted a valid promissory note, and Levy Gardens has not established any defenses to their enforcement by a preponderance of the evidence. Levy Gardens signed Note Two agreeing to pay First NBC $5,126,000.00 by September 26, 2010.[162] Girod has submitted evidence that as of August 28, 2019, the amount due under the Promissory Note totaled $281,619.51, excluding legal fees and other costs of collection.[163] Both Note One and Note Two state that "[i]f Lender refers this Note to an attorney for collection, or files suit against Borrower to collect this Note, or if Borrower files for bankruptcy or other relief from creditors, Borrower agrees to pay Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan."[164] Levy Gardens has admitted that there is an outstanding balance due on the Promissory Note[165] and has not submitted any evidence to contradict Giord's calculation of the amount due under the Promissory Note. Therefore, this Court finds that summary judgment in favor of Girod is warranted. Levy Gardens shall pay Girod all sums due under the Promissory Note, including attorneys' fees, to be established by separate motion. Furthermore, the Court finds that the undisputed facts in the record indicate that the security interest created by the MIM is enforceable, and summary judgment is warranted in favor of Girod on this issue as well.[166]

---

*Hotel, Inc.*, No. 15-1386, 2016 WL 952250, at *5 (E.D. La. Mar. 14, 2016) (Vance, J.) (applying Louisiana law and granting summary judgment in favor of plaintiff where defendant did not challenge validity of security interest).

[162] Rec. Doc. 134-6.

[163] Rec. Doc. 134-4 at 5.

[164] Rec. Docs. 134-5 at 2, 134-6 at 2.

[165] Rec. Doc. 85.

[166] *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 . *See also, e.g.*, *Bank of America, N.A. v. Garden Dist. Pet Hotel, Inc.*, No. 15-1386, 2016 WL 952250, at *5 (E.D. La. Mar. 14, 2016) (Vance, J.) (applying Louisiana law and granting summary judgment in favor of plaintiff where defendant did not challenge validity of security interest).

## IV. Conclusion

Girod has produced a valid promissory note executed by Levy Gardens. Levy Gardens does not dispute the validity of the promissory note. Moreover, Levy Gardens has not established any defense to payment by a preponderance of the evidence and does not dispute the amount due to Girod under the promissory note. Therefore, this Court finds that summary judgment in favor of Girod is warranted. Levy Gardens shall pay Girod all sums due under the Promissory Note, including attorneys' fees, to be established by separate motion. Furthermore, the Court finds that the undisputed facts in the record indicate that the security interest created by the MIM is enforceable, and summary judgment is warranted in favor of Girod on this issue as well.

Accordingly,

**IT IS HEREBY ORDERED** that Girod LoanCo, LLC's ("Girod") "Motion for Summary Judgment"[167] is **GRANTED**.

**IT IS FURTHER ORDERED** that Girod shall submit a proposed judgment, including all sums due under the Promissory Note, within fourteen days of this Order. Girod shall also file a motion regarding attorneys' fees and costs within fourteen days of this Order.

**NEW ORLEANS, LOUISIANA,** this 12th day of December, 2019.

*Nannette Jolivette Brown*
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[167] Rec. Doc. 134.